FILED
COURT OF APPEALS
DIVISION II

2014 AUG 26 AM 11: 36

STATE OF WASHINGTON
BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43896-8-II |
| Respondent, | UNPUBLISHED OPINION |
| v. | |
| KEITH HORNADAY, | |
| Appellant. | |

BJORGEN, A.C.J. — A jury found Keith Hornaday guilty of second degree assault, witness tampering, and six counts of violation of a no-contact order, based on conduct involving his intimate partner, Yvonne Joy Newsted-Klepper. Hornaday appeals his convictions and sentence, arguing that (1) the trial court's instruction defining recklessness, to which Hornaday did not object, relieved the State of its burden to prove an essential element of second degree assault; (2) defense counsel provided ineffective assistance by failing to object to the recklessness jury instruction; and (3) despite a *Brooks*[1] notation on the judgment and sentence, the trial court erred by imposing a term of community custody on one of the no-contact order violation counts that,

---

[1] *In re Restraint of Brooks*, 166 Wn.2d 664, 667 n.1, 211 P.3d 1023 (2009).

No. 43896-8-II

combined with the term of confinement, exceeded the statutory maximum for that crime. Hornaday also filed a statement of additional grounds for review (SAG), asserting that prosecutorial misconduct deprived him of a fair trial and that sufficient evidence does not support his assault conviction.

Based on the Supreme Court's recent dispositive opinion in *State v. Johnson*, 180 Wn. 2d 295, 325 P.3d 135 (2014), we hold that the recklessness instruction was not erroneous and that defense counsel's failure to object to it was not deficient. Holding also that the claims raised in the SAG have no merit, we affirm Hornaday's convictions. Because the *Brooks* notation no longer satisfies the requirements of the Sentencing Reform Act (SRA), chapter 9.94A RCW, we remand for correction of the judgment and sentence so that the combined terms of confinement and community custody on the final no-contact order violation conviction do not exceed the statutory maximum of 60 months.

FACTS

The State charged Hornaday with second degree assault, witness tampering, and six counts of violation of a no-contact order, alleging that he attacked Newsted-Klepper in an alley and subsequently communicated with her in an effort to persuade her not to testify against him. The State based the assault charge on both substantial bodily harm and strangulation, which are alternative means under the assault statute.

At trial, Newsted-Klepper described herself as Hornaday's wife, but admitted they had not legally married. Newsted-Klepper testified that she and Hornaday got in a fight in October

2

2010, at the apartment where she resided, and that she had struck Hornaday first, injuring him. After the fight, Hornaday left.

Newsted-Klepper testified that later that evening someone attacked her from behind as she walked through an alley near her building. She could not clearly remember the incident at trial, but recalled that her attacker choked and punched her, rendering her unconscious and breaking her glasses. Newsted-Klepper remembered seeing Hornaday in the alley at the time of the assault, but could not specifically identify him as the attacker. However, she did not recall seeing anyone else in the alley during the relevant time. After regaining consciousness, Newsted-Klepper went to her brother's apartment and was taken to the emergency room.

Perry Ockerman, the treating physician, testified that Newsted-Klepper had lost a tooth and sustained significant bruising, swelling, and abrasions in several places on her face, as well as bruising on her neck, tongue, and limbs. Dr. Ockerman observed some broken blood vessels on Newsted-Klepper's neck, consistent with strangulation, but no other injury indicative of strangulation. Dr. Ockerman testified that Newsted-Klepper had described her attacker as a "former significant other" or "ex-boyfriend" with whom she had broken up some months earlier. 3 Report of Proceedings (RP) at 299, 308. Bremerton police officer Bryan Hall photographed Newsted-Klepper's injuries at the hospital, describing them as scratches and bruising around one eye, as well as bruises and abrasions to the face, neck, and limbs. Hall testified that he arrested Hornaday the following day.

The trial court entered a pretrial domestic violence no-contact order on December 1, 2011, prohibiting Hornaday from contacting Newsted-Klepper. At trial, the State presented

extensive evidence that Hornaday nevertheless communicated with Newsted-Klepper and encouraged her not to testify against him, including recordings of calls to Newsted-Klepper's telephone from the jail unit where Hornaday awaited trial.

The trial court also admitted recordings of calls to certain other people placed using the personal identification number that jail staff had assigned to Hornaday. Hornaday discussed his case in some of the calls, but never accused Newsted-Klepper of lying or denied having attacked her.

The defense attacked Newsted-Klepper's credibility, pointing out inconsistencies in her various statements and eliciting testimony that she regularly used methamphetamine, sometimes used the threat of jail to manipulate Hornaday, and had convictions for crimes of dishonesty. Hornaday presented evidence in support of the defense theory that Erik McShepard, with whom Newsted-Klepper had been intimately involved, actually assaulted Newsted-Klepper and that she accused Hornaday instead because she wished to punish Hornaday for deceit and infidelity. Hornaday also elicited testimony that, although Newsted-Klepper initially identified her attacker as an "ex-boyfriend," she thought of Hornaday as her husband. VRP at 178-79, 182, 308.

The trial court instructed the jury on the definition of "recklessness" as follows:

> A person is reckless or acts recklessly when he or she knows of and disregards a substantial risk that a wrongful act may occur and this disregard is a gross deviation from conduct that a reasonable person would exercise in the same situation.

Clerk's Papers (CP) at 92. Hornaday did not object to the instruction. In discussing recklessness during closing argument, the prosecutor specified that "the State has to prove . . . that the injuries were caused recklessly." VRP at 499.

4

The trial court also instructed the jurors that "the State relie[d] upon evidence regarding a single incident constituting the alleged crime" for the assault charge, and that they must unanimously agree that the State had proved that specific incident in order to convict. CP at 94. The State made clear in closing argument that it relied on the attack that occurred in the alley, not the prior incident inside the apartment. Nonetheless, the jury submitted a written question to the court during deliberations, asking if "the location of the specific incident, Happening in the House or Alley, [was] Germaine [sic]?" CP at 110. The court responded that

> [y]es, the location of the specific incident of the alleged assault is germane. To convict the defendant of Assault in the Second Degree, the jury must unanimously agree that the state has proved beyond a reasonable doubt that the assault occurred in the alley.

CP at 110.

The jury found Hornaday guilty of all charges. The special verdict form for the assault charge showed that the jury unanimously agreed that the State had met its burden by proving substantial bodily harm beyond a reasonable doubt, but did not unanimously agree as to the alternative means of strangulation.

The sentencing court imposed an exceptional sentence based on a finding that, because Hornaday's prior convictions yielded an offender score higher than nine, some offenses would otherwise go unpunished. The court sentenced Hornaday to 73 months' confinement and 18 months' community custody on the assault conviction, to run concurrently with the witness tampering and five of the no-contact order violation sentences, but, as an exceptional sentence, ordered the final no-contact order violation sentence to run consecutively to the other sentences. This consecutive sentence added 60 months' confinement and 12 months' community custody to

Hornaday's total sentence. The court noted on the judgment and sentence that the combination of confinement and community custody should not exceed the statutory maximum.

Hornaday timely appeals.

## ANALYSIS

Because Hornaday's challenge to the sufficiency of the evidence, if successful, would require dismissal of the assault charge with prejudice, we address that claim first. The analysis then turns to the recklessness instruction and the related ineffective assistance claim, followed by the prosecutorial misconduct claim. Finally we address Hornaday's claim that the judgment and sentence does not conform to the requirements of the SRA.

### I. SUFFICIENCY OF THE EVIDENCE

Hornaday contends in his SAG that his assault conviction rests on insufficient evidence because the State established only his presence in the alley at the time of the attack. We disagree.

In evaluating the sufficiency of the evidence, we review the evidence in the light most favorable to the State. *State v. Ehrhardt*, 167 Wn. App. 934, 943, 276 P.3d 332 (2012) (citing *State v. Drum*, 168 Wn.2d 23, 34, 225 P.3d 237 (2010)). We determine "'whether any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt.'" *Drum*, 168 Wn.2d at 34-35 (quoting *State v. Wentz*, 149 Wn.2d 342, 347, 68 P.3d 282 (2003)). An appellant who claims that insufficient evidence supports his conviction "admits the truth of the State's evidence and all reasonable inferences therefrom." *Ehrhardt*, 167 Wn. App. at 943 (citing *Drum*, 168 Wn.2d at 35).

Where "'the inferences and underlying evidence are strong enough to permit a rational fact finder to find guilt beyond a reasonable doubt, a conviction may be properly based on pyramiding inferences.'" *State v. Bencivenga*, 137 Wn.2d 703, 711, 974 P.2d 832 (1999) (quoting 1 CLIFFORD S. FISHMAN, JONES ON EVIDENCE: CIVIL AND CRIMINAL § 5.17, at 450 (7th ed. 1992)) (internal quotation marks omitted). Inferences drawn from circumstantial evidence "must be reasonable and cannot be based on speculation." *State v. Vasquez*, 178 Wn.2d 1, 16, 309 P.3d 318 (2013) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). Finally, "we defer to the fact finder on issues of witness credibility." *Drum*, 168 Wn.2d at 35.

Hornaday does not contend that the State failed to prove any particular element of second degree assault, but instead argues that the State failed to present sufficient evidence identifying him as the assailant. On the question of identity, the jury heard evidence that (1) Hornaday and Newsted-Klepper had fought earlier in the evening; (2) Hornaday was the only person Newsted-Klepper saw in the alley at the time of the assault; and (3) Hornaday discussed the incident with a number of people, including Newsted-Klepper, under circumstances where an innocent person would likely deny the accusation,[2] but did not deny his involvement. From this evidence, a

---

[2] A call Hornaday apparently placed to one Stacie Beach, the relevant portion of which the trial court admitted into evidence, included the following exchange:

Hornaday:   I got a - I got a - a DV with you know, with the wife and : . .
Beach:   She probably deserved - hell, she probably deserved the shit. That's all I'm saying.
Hornaday:   Okay. See the thing is though - now, listen though. The prosecutor can listen in on these conversations so I don't wanna make it sound like - like I did it.
Beach: I know. I didn't say you did it. I – I'm saying . . . that bitch was beat up.

rational fact finder could have found beyond a reasonable doubt that it was Hornaday who attacked Newsted-Klepper in the alley. Thus, Hornaday's challenge to the sufficiency of the evidence fails.

## II. THE TRIAL COURT'S RECKLESSNESS INSTRUCTION

Hornaday contends that the trial court's instruction defining "recklessness" relieved the State of its burden to prove an essential element of the charged crime by stating that "[a] person is reckless or acts recklessly when he or she knows of and disregards a substantial risk that *a wrongful act* may occur." Br. of Appellant at 7. This phrasing was flawed, Hornaday argues, because it required only the risk that some undefined wrongful act may occur, instead of the risk of substantial bodily harm, pertinent to second degree assault. The State conceded[3] the error in the instruction, but maintains that we should affirm because Hornaday did not object to the instruction or, in the alternative, because the error was harmless beyond a reasonable doubt.

In *Johnson*, 180 Wn.2d at 304-08, our Supreme Court addressed a nearly identical instruction defining recklessness with the same reference to "a wrongful act" challenged here by Hornaday. Johnson, like Hornaday, "argue[d] that the general instruction regarding recklessness lowered the State's burden of proof because the phrase 'a wrongful act' was used instead of the

---

Hornaday:    Yeah. Yeah. I know.
Beach: She probably did it to herself.
Hornaday:    Or - or she went to a spot looking for me. Yeah. Yeah.
CP at 28-29.

[3] The State conceded the error based on our decision in *State v. Harris*, 164 Wn. App. 377, 263 P.3d 1276 (2011). The parties submitted their briefing prior to our Supreme Court's decision in *Johnson*, 180 Wn.2d 295, which overruled *Harris* on the relevant point, as discussed below.

more charge-specific language 'substantial bodily harm.'" *Johnson*, 180 Wn.2d at 305.
Rejecting this argument, the court held that "the generic instruction defining 'reckless' was
sufficient without the charge-specific language given that the 'to convict' instruction included
the proper language." *Johnson*, 180 Wn.2d at 305.[4]

The "to convict" instruction given to Hornaday's jury stated:

> To convict the defendant of the crime of assault in the second degree as charged in Count I, each of the following two elements of the crime must be proved beyond a reasonable doubt:
> (1) That on or about October 30, 201 1 [sic] through October 31, 2011, the defendant:
>    (a) intentionally assaulted Yvonne J. Newsted-Klepper and thereby recklessly inflicted substantial bodily harm; or
>    (b) assaulted Yvonne J. Newsted-Klepper by strangulation; and
> (2) That this act occurred in the State of Washington.

CP at 93. This instruction contains the same charge-specific reference to "recklessly inflicted
substantial bodily harm" as did the "to convict" instruction in *Johnson*, 180 Wn.2d at 304-05.
Consequently, under *Johnson* the instruction defining recklessness was not erroneous, and we
reject the State's concession that it was.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

To prevail on a claim of ineffective assistance of counsel, an appellant must show

> (1) that defense counsel's conduct was deficient, i.e., that it fell below an objective standard of reasonableness; and (2) that the deficient performance resulted in prejudice, i.e., that there is a reasonable possibility that, but for the deficient conduct, the outcome of the proceeding would have differed.

---

[4] *See also Johnson*, 180 Wn.2d at 305-07: "[I]t is not error to use the generic definition of 'reckless' when the 'to convict' instruction contains all of the essential elements, including the charge-specific language for recklessness."

*State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004) (citing *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987) (adopting the test from *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984))). The appellant overcomes the strong presumption that counsel performed adequately only by showing that "no conceivable legitimate tactic" explains the attorney's conduct. *Reichenbach*, 153 Wn.2d at 130.

As shown above, the trial court's instruction on recklessness was not erroneous. Therefore, defense counsel's choices not to object to it and not to propose an alternative instruction did not fall below an objective standard of reasonableness. With that, Hornaday's claim of ineffective assistance of counsel fails.

## IV. PROSECUTORIAL MISCONDUCT

Hornaday appears to argue that the State improperly elicited testimony concerning the prior fight inside the apartment and improperly commented on this evidence in closing. Hornaday contends that prejudice is established by "the likelihood a rational trier of fact was misled and swayed to form a finding of guilt, based upon tainted evidence of prior incident." SAG at 13. Hornaday did not object to this evidence at trial.

We will reverse a conviction due to prosecutorial misconduct only if the defendant establishes that the conduct was both improper and prejudicial. *State v. Monday*, 171 Wn.2d 667, 675, 257 P.3d 551 (2011). We examine the effect of a prosecutor's improper conduct in light of the full trial context: the evidence presented, the issues and arguments presented in the case, and the instructions given to the jury. *Monday*, 171 Wn.2d 675(citing *State v. McKenzie*, 157 Wn.2d 44, 52, 134 P.3d 221 (2006)). It is improper for a prosecutor to present evidence to

the jury not properly admitted at trial. *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 705-06, 286 P.3d 673 (2012). A prosecutor may, however, argue that evidence does not support a defense theory and present a fair response to defense counsel's arguments. *State v. Russell*, 125 Wn.2d 24, 87, 882 P.2d 747 (1994).

A defendant establishes sufficient prejudice for reversal by showing a substantial likelihood the misconduct affected the verdict. *Monday*, 171 Wn.2d at 675 (citing *State v. Yates*, 161 Wn.2d 714, 774, 168 P.3d 359 (2007)). Furthermore, failure to timely object to a prosecutor's improper comment constitutes a waiver, unless the remark was "'so flagrant and ill-intentioned that an instruction would not have cured the prejudice.'" *Glasmann*, 175 Wn.2d at 704. Even clearly improper remarks do not require reversal "if they were invited or provoked by defense counsel and are in reply to his or her acts and statements, unless the remarks are not a pertinent reply or are so prejudicial that a curative instruction would be ineffective." *Russell*, 125 Wn.2d at 86.

Hornaday does not show prejudice, let alone incurable prejudice. The trial court properly instructed the jury that the State relied on a single incident. As discussed above, the prosecutor clearly explained to the jury that the State relied only on the events in the alley for the assault charge. When the jurors submitted a question on the matter, the court again clearly and properly explained the matter. Therefore, Hornaday's claim of prosecutorial misconduct fails.

V. SENTENCE IN EXCESS OF THE STATUTORY MAXIMUM

Hornaday argues that the sentencing court erred by imposing a term of community custody on one of the no-contact order violation convictions that, combined with the term of

confinement, exceeded the statutory maximum for that crime. The State concedes the error, and we accept the State's concession.

RCW 9.94A.701(9), enacted in 2009, provides that the community custody term specified by RCW 9.94A.701 "shall be reduced by the court whenever an offender's standard range term of confinement in combination with the term of community custody exceeds the statutory maximum for the crime." Since this statute took effect, our Supreme Court has held that the "*Brooks*[5] notation," used by the trial court here, no longer complies with the SRA's requirement. *State v. Boyd*, 174 Wn.2d 470, 472, 275 P.3d 321 (2012).

Hornaday received the statutory maximum of 60 months of confinement on the final no-contact order violation conviction. The trial court nonetheless imposed an additional 12 months of community custody on that conviction. The *Brooks* notation that the total could not exceed the statutory maximum does not correct the error.

The remedy is to "remand to the trial court to either amend the community custody term or resentence [Hornaday] on the [no-contact] order violation conviction consistent with RCW 9.94A.701(9)." *Boyd*, 174 Wn.2d at 473.

CONCLUSION

We affirm Hornaday's convictions. We also remand to the trial court to correct the judgment and sentence so that the combined terms of confinement and community custody for

---

[5] In *In re Restraint of Brooks*, 166 Wn.2d 664, 667 n.1, 672-73, 211 P.3d 1023 (2009), our Supreme Court had rejected a claim that a sentence exceeded the statutory maximum, even though the term of community custody combined with the term of confinement were longer than the applicable maximum, because the trial court had noted on the judgment and sentence that "[t]he total of the term of incarceration and the term of community custody for each count[] . . . shall not exceed the statutory maximum."

12

No. 43896-8-II

the sentence on the final no-contact order violation conviction do not exceed the statutory maximum of 60 months.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____, A.C.J.
BJORGEN, J.

We concur:

_____
HUNT, J.

_____
LEE, J.