

**FILE**

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE **MAY 0 1 2014**

*Madsen, C.J.*

CHIEF JUSTICE

This opinion was filed for record
at 8:00 a.m. on May 1, 2014

Ronald R. Carpenter
Supreme Court Clerk

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | |
| Petitioner/Cross Respondent, | ) | No. 88683-1 |
| | ) | |
| v. | ) | En Banc |
| | ) | |
| J.C. JOHNSON, | ) | |
| | ) | Filed **MAY 0 1 2014** |
| Respondent/Cross Petitioner. | ) | |
| | ) | |

OWENS, J. -- J.C. Johnson[1] was convicted of five crimes related to several

days of ongoing domestic violence against his wife. We review two holdings by the

Court of Appeals. First, the Court of Appeals overturned Johnson's unlawful

imprisonment conviction because the State did not include the definition of "restrain"

in the information charging him with the crime. We reverse the Court of Appeals and

reinstate Johnson's conviction because charging documents need contain only the

essential elements of a crime, not related definitions. Second, the Court of Appeals

agreed with Johnson that it was error to give a jury instruction on the generic

---

[1] J.C. uses his initials as his legal name and is referred to hereinafter as "Johnson."

definition of "reckless" for the charge of assault in the second degree but held that his

counsel was not ineffective for proposing it because no court had yet ruled on the

issue. On this issue, we affirm the Court of Appeals but for a different reason. It is

not error to instruct the jury on the generic definition of "reckless" as long as the jury

is also given a "to convict" instruction that lists every element of the crime the State

needs to prove in order to convict the defendant, including the charge-specific

language for "reckless."

## FACTS

A jury convicted Johnson for acts of domestic violence against his wife, J.J.[2]

For three days Johnson kept J.J. in their apartment under his control. Johnson would

not let her get dressed while inside, and she only went out of the apartment

accompanied by him. At times, Johnson used his 130-pound Rottweiler to restrain her

movements. J.J. testified that he kept a knife and an ice pick near the bed to

intimidate her. J.J. also testified that she did not feel free to leave, in part, because he

threatened to hurt her children from a previous marriage.

During those three days, Johnson severely injured J.J. He choked her on

multiple occasions. J.J. testified that he also hit her with rocks and allowed his

Rottweiler to bite her. J.J. also testified that he grabbed her and slammed her down so

---

[2] We use J.J.'s initials to protect her privacy.

that she hit her neck. Johnson admitted at trial that he "shoved her hard" and she fell and hit her head. Report of Proceedings (Dec. 14, 2010) at 33-34.

J.J. finally escaped after Johnson threatened to kill her by suffocating her with duct tape. J.J. ran from the house in her underwear when he turned his back on her and found help from a neighbor. J.J. received treatment for her injuries, which included dog bites, bruises, and severe swelling—especially around her face and throat.

The State charged Johnson with five crimes, including unlawful imprisonment and second degree assault for intentionally assaulting another and thereby recklessly inflicting substantial bodily harm. The jury convicted Johnson on all counts and Johnson appealed. The Court of Appeals held that the information for the unlawful imprisonment charge was insufficient because it left out the definition of "restrain." *State v. Johnson*, 172 Wn. App. 112, 136-40, 297 P.3d 710 (2012). The court also held that the jury instruction defining "reckless" for the assault charge improperly lowered the State's burden of proof, but defense counsel was not deficient for proposing it. *Id.* at 133. We granted review of those two issues only. *State v. Johnson*, 178 Wn.2d 1001, 308 P.3d 642 (2013).

## ISSUES

1. Was the information for the unlawful imprisonment charge sufficient even though it did not include the definition of "restrain?"

2. Did defense counsel provide ineffective assistance by proposing a definition of "reckless" in the jury instructions that did not include charge-specific language when the "to convict" instruction included the specific language?

## STANDARD OF REVIEW

Johnson challenges the sufficiency of the information on constitutional grounds. "We review allegations of constitutional violations de novo." *State v. Siers*, 174 Wn.2d 269, 273-74, 274 P.3d 358 (2012). He also challenges the jury instructions in his case. "We review jury instructions de novo." *State v. Levy*, 156 Wn.2d 709, 721, 132 P.3d 1076 (2006).

## ANALYSIS

*1. The Information Was Constitutionally Sufficient*

In criminal cases, the accused has the constitutional right to know the charges against them. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. The State formally gives notice of the charges in the information, also known as the charging document. *See* CrR 2.1(a)(1) ("[T]he information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged.").

The information is constitutionally sufficient "only if all essential elements of a crime, statutory and nonstatutory, are included in the document." *State v. Vangerpen*, 125 Wn.2d 782, 787, 888 P.2d 1177 (1995). "'An essential element is one whose specification is necessary to establish the very illegality of the behavior charged.'"

*State v. Zillyette*, 178 Wn.2d 153, 158, 307 P.3d 712 (2013) (internal quotation marks omitted) (quoting *State v. Ward*, 148 Wn.2d 803, 811, 64 P.3d 640 (2003)). This essential elements rule exists "to apprise the accused of the charges against him or her and to allow the defendant to prepare a defense." *Vangerpen*, 125 Wn.2d at 787. If the State fails to allege every essential element, then the information is insufficient and the charge must be dismissed without prejudice. *State v. Nonog*, 169 Wn.2d 220, 226 n.3, 237 P.3d 250 (2010).

Johnson was charged with unlawful imprisonment under former RCW 9A.40.040 (1975). That statute reads, "A person is guilty of unlawful imprisonment if he knowingly restrains another person." Former RCW 9A.40.040. The information at issue in this case reads as follows:

> And I, Daniel T. Satterberg, Prosecuting Attorney aforesaid further do accuse J.C. JOHNSON of the crime of **Unlawful Imprisonment - Domestic Violence**, based on a series of acts connected together with another crime charged herein, committed as follows:

> That the defendant J.C. JOHNSON in King County, Washington, during a period of time intervening between May 4, 2009 through May 6, 2009, did knowingly restrain [J.J.], a human being;

> Contrary to RCW 9A.40.040, and against the peace and dignity of the State of Washington.

Clerk's Papers (CP) at 18. Johnson argues that the information is deficient because it does not include the statutory definition of "restrain." "Restrain" is defined as "to

restrict a person's movements without consent and without legal authority in a manner which interferes substantially with his liberty." Former RCW 9A.40.010(1) (1975).

Johnson relies on *State v. Warfield*, 103 Wn. App. 152, 157, 5 P.3d 1280 (2000), where the Court of Appeals held that the term "knowingly" in the unlawful imprisonment statute modifies every aspect of the term "restrain." Thus, the court held that the State must prove that the defendant knew that the restraint was (1) without consent and (2) without legal authority, in a manner that interfered substantially with the victim's liberty. *Id.* Johnson argues that this definition is an essential element of the crime that must appear in the information because the State must prove that he knew that he lacked legal authority to restrain the victim. We disagree.

A. *The Information Does Not Need To Include Definitions*

The State need not include definitions of elements in the information. It was enough that the State alleged all of the essential elements found in the unlawful imprisonment statute, former RCW 9A.40.040. We have never held that the information must also include definitions of essential elements. In fact, we have rejected similar arguments before.

In *State v. Allen*, 176 Wn.2d 611, 626-27, 294 P.3d 679 (2013), the defendant was charged with felony harassment under RCW 9A.46.020, which makes it a crime to "knowingly threaten[ ] . . . [t]o cause bodily injury." RCW 9A.46.020(1)(a)(i).

The State did not include in the information the constitutional limitation that only true threats may be charged, and the defendant argued that this omission was error. *Allen*, 176 Wn.2d at 626-27. We disagreed. Importantly, we noted, "We have never held the true threat requirement to be an essential element of a harassment statute." *Id.* at 628. Rather, "'the constitutional concept of "true threat" merely defines and limits the scope of the essential threat element in the felony telephone harassment statute and is not itself an essential element of the crime.'" *Id.* at 630 (quoting *State v. Tellez*, 141 Wn. App. 479, 484, 170 P.3d 75 (2007)). Thus, we found no error in the information that did not include the "true threat" concept. *Id.*

The reasoning in *Allen* applies to this case. Like the "true threat" concept, the definition of "restrain" defines and limits the scope of the essential elements. That does not make the definition itself an essential element that must be included in the information. In this case, the information included all of the essential elements, and therefore we hold that it was constitutionally sufficient.[3]

Johnson argues that the definition of "restrain" expands rather than limits the scope of the mens rea element because the State must prove that the defendant knew that the

---

[3] We note that our decision resolves a split in the Court of Appeals. After we issued our decision in *Allen*, a different panel of the same division properly held that the information does not need to include the definition of "restrain." *State v. Rattana Keo Phuong*, 174 Wn. App. 494, 545, 299 P.3d 37 (2013).

restraint was without legal authority. That argument relies entirely on the Court of Appeals' holding in *Warfield.* We take this opportunity to examine that case further.

B. Warfield *Involved a Unique Set of Facts and Does Not Apply Here*

Johnson is misguided in relying on *Warfield* for the proposition that the definition of "restrain" is an essential element because the State must prove that he knew he did not have legal authority to restrain his wife. *Warfield* involved a group of bounty hunters who had a good faith belief that they had the legal authority to catch, restrain, and return a person to Arizona, where there was a warrant for the person's arrest. 103 Wn. App. at 154-55. The State charged them with unlawful imprisonment because the Arizona warrant—which turned out to be for a misdemeanor—had no lawful effect in Washington, and the trial court denied their motion to dismiss based on the defense that they thought they had legal authority to restrain the victim. *Id.* at 155. The Court of Appeals reversed and, as noted above, held that the State must prove that the defendants knew they lacked legal authority to restrain the victim. *Id.* at 157. Because it was undisputed that the defendants believed they had legal authority to restrain the victim, the Court of Appeals dismissed the charges. *Id.* at 159. The court never discussed what must be included in the information.

Because the *Warfield* defendants had a good faith belief that they had legal authority to restrain the victim, *Warfield* is a unique case. The *Warfield* court's logic

8

does not extend to most unlawful imprisonment cases—particularly those involving domestic violence—where there is no indication that the defendants believed they actually had legal authority to imprison the victim. Today we clarify that *Warfield*'s holding is limited to those unique cases where the defendant had a good faith belief that he or she had legal authority to imprison a person.

## 2. Counsel Was Not Ineffective for Proposing the Jury Instruction Defining "Reckless" That Was Used at Trial

Johnson challenges his conviction of assault in the second degree, arguing that his counsel was ineffective for proposing the definition of "reckless" that was used in the jury instructions at trial. Under the Sixth Amendment, a criminal defendant has the constitutional right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To show ineffective assistance of counsel, a petitioner must show that defense counsel's performance was deficient and that counsel's errors prejudiced the defendant's ability to receive a fair trial. *Id.* at 687; *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995).

The State charged Johnson with assault under former RCW 9A.36.021(1)(a) (2007), which provides that a person is guilty of second degree assault if he or she "[i]ntentionally assaults another and thereby recklessly inflicts substantial bodily harm." Using that language, the "to convict" instruction in this case read:

> To convict the defendant of the crime of assault in the second degree, as charged in count II, each of the following elements of the crime must be proved beyond a reasonable doubt:

(1) That during the time intervening between May 4, 2009 and May 6, 2009, the defendant intentionally assaulted [J.J.];

(2) That the defendant thereby *recklessly inflicted substantial bodily harm* on [J.J.]; and

(3) That the acts occurred in the State of Washington.

CP at 49 (emphasis added). Johnson does not challenge this instruction. Rather, he faults his counsel for proposing the general definition of "reckless" also given to the jury. That instruction—based on the *Washington Pattern Jury Instructions: Criminal* (WPIC)—read:

A person is reckless or acts recklessly when he or she knows of and disregards a substantial risk that *a wrongful act* may occur and this disregard is a gross deviation from conduct that a reasonable person would exercise in the same situation.

When recklessness as to a particular fact or result is required to establish an element of a crime, the element is also established if a person acts intentionally or knowingly as to that fact or result.

CP at 42 (emphasis added). He argues that the general instruction regarding recklessness lowered the State's burden of proof because the phrase "a wrongful act" was used instead of the more charge-specific language "substantial bodily harm." The Court of Appeals agreed that under current Court of Appeals precedent, the charge-specific language must be used in the definition of "reckless," but the court found that counsel provided effective assistance because the trial occurred prior to the 2011 Court of Appeals cases that held that charge-specific language must be used in the

10

definition of "reckless." *Johnson*, 172 Wn. App. at 133 (citing *State v. Peters*, 163 Wn. App. 836, 261 P.3d 199 (2011); *State v. Harris*, 164 Wn. App. 377, 263 P.3d 1276 (2011)).

We affirm the Court of Appeals but for a different reason. Johnson received effective assistance, but not because the Court of Appeals had yet to rule on the issue. Rather, the generic instruction defining "reckless" was sufficient without the charge-specific language given that the "to convict" instruction included the proper language.

We consider challenges to jury instructions in the context of the jury instructions as a whole. *State v. Pirtle*, 127 Wn.2d 628, 656, 904 P.2d 245 (1995). "Jury instructions, *taken in their entirety*, must inform the jury that the State bears the burden of proving every essential element of a criminal offense beyond a reasonable doubt." *Id.* (emphasis added). Specifically, the "'to convict [jury] instruction must contain all of the elements of the crime because it serves as a yardstick by which the jury measures the evidence to determine guilt or innocence.'" *State v. Sibert*, 168 Wn.2d 306, 311, 230 P.3d 142 (2010) (alteration in original) (internal quotation marks omitted) (quoting *State v. Smith*, 131 Wn.2d 258, 263, 930 P.2d 917 (1997)). We will not look to other jury instructions to supplement a defective "to convict" instruction. *Id.*

Taken in their entirety, the instructions in this case were sufficient. The "to convict" instruction properly laid out the elements of the crime. It identified the

wrongful act contemplated by Johnson as "substantial bodily harm." Separately providing a generic definition of "reckless" did not relieve the State of its burden of proof. The "to convict" instructions are the primary "yardstick" the jury uses to measure culpability, and here they were accurate. The Court of Appeals incorrectly concluded that the definitional instruction also had to use the charge-specific language.

Under the reasoning of the Court of Appeals, any crime where recklessness is an element would require charge-specific language in both the "to convict" instructions and the general instruction on the definition of "reckless." *See Harris*, 164 Wn. App. at 385 (requiring the substitution of "wrongful act" in the WPIC general definition of "reckless" with the statutory language for assault in the first degree, even when the "to convict" instruction properly described the specific wrongful act). If we adopted this reasoning, jury instructions could never include a general definition of "reckless."

That implication is problematic. A jury could face great confusion in cases where a defendant is charged with multiple crimes that require multiple "reckless" definitions. The State offers the example of a defendant charged with drive-by shooting, assault in the second degree, and reckless endangerment—all of which aim to prevent a unique harm. *See* RCW 9A.36.045, .021, .050. Under the reasoning of

the Court of Appeals, separate definitions of "reckless" would be needed for each crime, causing confusion and adding unnecessary repetition to the jury instructions.

Additionally, when the reasoning of the Court of Appeals is applied to other crimes, the "reckless" definitions become unduly confusing. For example, if a court added the charge-specific language needed for criminal mistreatment in the second degree, the instruction regarding the definition of "recklessness" would read:

> A person is reckless or acts recklessly when he or she knows of and disregards a substantial risk that *an imminent and substantial risk of death or great bodily harm* may occur and this disregard is a gross deviation from conduct that a reasonable person would exercise in the same situation.

*See* RCW 9A.42.030(1); RCW 9A.08.010(1)(c). The added language makes the definition confusing given the multiple layers of substantial risks contemplated. In some cases, parties may consider adding charge-specific language to the "reckless" definition, as the WPIC recommends. 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 10.03 cmt. at 209 (3d ed. 2008). But it is not error to use the generic definition of "reckless" when the "to convict" instruction contains all of the essential elements, including the charge-specific language for recklessness. Having found that no error occurred, we hold that counsel provided effective assistance.

13

## CONCLUSION

We hold that the charging information for Johnson's unlawful imprisonment charge was constitutionally sufficient because it needed to contain only the essential elements of the crime, not related definitions. We reverse the Court of Appeals on this issue and reinstate Johnson's conviction for unlawful imprisonment. We also hold that Johnson's counsel was not ineffective for proposing a jury instruction on the generic definition of "reckless" for the second degree assault charge because we review instructions as a whole, and here, the "to convict" instruction accurately expressed the essential elements of the crime. We affirm the Court of Appeals on this issue, albeit for different reasoning.

_____

WE CONCUR:

Madsen, C.J. _____     Stephens, J. _____

_____     _____

Fairhurst. J. _____     González, J. _____

_____     _____

NO. 88683-1

GORDON McCLOUD, J. (concurring in part and dissenting in part)—The
majority holds that because the "to convict" instruction contained all the elements
of the charged crime of second degree assault, it does not matter that one of those
elements was defined too broadly in another instruction. I respectfully dissent.

The "to convict" instruction in this case correctly told the jury that in order to
convict the defendant of second degree assault, the State must prove (among other
things) that the defendant "recklessly inflict[ed] substantial bodily harm" on another.
RCW 9A.36.021(1)(a). Another instruction in this case then defined the mental state
of "recklessly": "A person is reckless or acts recklessly when he or she knows of and
disregards a substantial risk that a wrongful act may occur . . . ." Clerk's Papers
(CP) at 42. The defendant argues that the lack of charge-specific language in this
definitional jury instruction permitted the jury to convict him if he was reckless as
to *any* wrongful act occurring, whereas our case law requires that he may be
convicted only if he was reckless as to the specific wrongful act charged—i.e.,
inflicting substantial bodily harm.

1

The majority implicitly acknowledges that the jury must find the defendant was reckless as to the specific wrongful act that is an element of the criminal charge.[1] It asserts, though, that because the "to convict" instruction for second degree assault properly required the jury to find that the defendant "recklessly inflicted substantial bodily harm" on the victim, CP at 49, using the general definition of "reckless" elsewhere in the instructions, CP at 42, was not error.

I disagree with the majority's reasoning. The fact that the "to convict" instruction properly stated the elements of second degree assault does not cure the overbroad definition of "reckless." This becomes evident when one plugs the general definition of "reckless" into the "to convict" instruction: "To convict the defendant . . . , each of the following elements . . . must be proved beyond a reasonable doubt: . . . That the defendant thereby [knowing of and disregarding a substantial risk that a wrongful act may occur] inflicted substantial bodily harm." CP at 49. Thus, including the phrase "recklessly inflicted substantial bodily harm" in the "to convict" instruction does nothing to prevent the jury from convicting if it

---

[1] Indeed, the majority must acknowledge this because it is the law. *See, e.g., State v. Gamble*, 154 Wn.2d 457, 467, 114 P.3d 646 (2005) ("Looking to the 'wrongful act' caused by a defendant's actions, to prove manslaughter the State must show Gamble '[knew] of and disregard[ed] a substantial risk that a [*homicide*] may occur'" (alterantions in original) (quoting RCW 9A.08.010(1)(c))).

2

finds, for example, that the defendant was reckless as to inflicting minor bodily harm, but in fact inflicted substantial bodily harm. That relieves the State of its burden to prove each element beyond a reasonable doubt. And it is precisely the inclusion of the general definition of "reckless" elsewhere in the instructions that permits such a conviction based on a lesser burden of proof for the State.

The majority's other reasons for allowing a general definition of "reckless" in a case where the State must prove recklessness as to a specific act are likewise unconvincing. First, the majority asserts that if it decided this case differently, a general definition of "reckless" could never be used in jury instructions. But the general definition instruction quoted above *should never* be used in jury instructions, because it does in fact lower the State's burden of proof. A modified instruction, referring to something other than disregarding the risk of "*a* wrongful act," might cure the problem, though. For example, the definition could reference "*the* wrongful result charged" in the "to convict" instruction. *See State v. Cronin*, 142 Wn.2d 568, 579, 14 P.3d 752 (2000) (accomplice liability instruction must reference intent to further ""'the crime'"" charged, not just ""'a crime'"" (quoting *State v. Roberts*, 142 Wn.2d 471, 513, 14 P.3d 713 (2000))). But use of the general definition instruction given here does not help; instead, it creates the problem.

3

Second, the majority is concerned that when the State charges multiple crimes with a mens rea of "recklessness," multiple charge-specific definitions of "reckless" would be confusing and repetitive. On the contrary, multiple charge-specific definitions would provide specificity. Or, a single instruction referencing "*the wrongful act charged*" might do the trick. Either solution would reduce the potential for jury confusion regarding to which act the recklessness mens rea applied. Otherwise, in the multiple-recklessness-crimes scenario, a jury might find, for example, that recklessness as to one of the charged acts sufficed to establish recklessness for all the charged acts, and such a finding would in fact be supported by a literal reading of the definition in the jury instructions.

Third, the majority worries that some charge-specific definitions might be confusing. That may be so, but if such a definition is too confusing, it should be dealt with on a case by case basis and not by relieving the State of its burden to show recklessness as to the particular charge at issue.

The majority's resolution of this case permits a jury to convict where it finds recklessness as to any act, not just the specific criminal act charged, and thus relieves the State of its full burden to prove each element of the charged crime. While I agree

with the majority's decision on the unlawful imprisonment charge, I respectfully

dissent from its decision as to the assault charge.

Gordon McCloud, J.

Wiggins, J.