IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 35000-2-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| DELBERT HAROLD BENSON, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — Delbert Benson appeals his perjury conviction. We affirm.

FACTS

Delbert Benson agreed to work as a confidential informant and facilitate a controlled drug buy on October 30, 2012. Prior to the controlled buy, Mr. Benson met with two police officers. The officers searched Mr. Benson's person and pickup truck and provided him $200 in buy funds. Mr. Benson was also outfitted with an audio transmitting and recording device. The device enabled the officers to listen to Mr. Benson's conversations in real time and also to record the conversations for future use.

After being wired and prepped for the controlled buy, officers followed Mr. Benson to the residence of John Gant. Mr. Benson went inside the residence and met with Mr. Gant for approximately 40 minutes. During the meeting, officers could hear

Mr. Benson negotiating a purchase for $150. The conversation included drug

terminology such as a "ball," an "eight ball" and a "teen." Clerk's Papers (CP) at 36, 38.

After finishing his meeting with Mr. Gant, the police followed Mr. Benson back to the

police station.

Once at the station, officers performed additional searches of Mr. Benson and his

pickup. They recovered $50 in buy funds and a plastic container containing

methamphetamine. During a recorded debriefing, Mr. Benson said that he had gone to

Mr. Gant's house and given him $150. Mr. Benson was asked if Mr. Gant had

methamphetamine.[1] He responded, "yes." CP at 59. Mr. Benson explained Mr. Gant

weighed the methamphetamine and took the $150 in exchange for the drug.

As a result of Mr. Benson's controlled buy, the State charged Mr. Gant with

controlled substance violations. Mr. Benson was called to testify at trial. During his

testimony, Mr. Benson denied Mr. Gant had ever supplied him with methamphetamine.

Mr. Benson claimed that the methamphetamine turned over to police belonged to him

and had come from a tool box located in the bed of his pickup. Mr. Benson also testified

that he had kept the $150 that he was supposed to have given to Mr. Gant. According to

---

[1] The officers referred to methamphetamine as "it" during the recorded debriefing. CP at 59. The context of the interview makes clear that the "it" being referenced is the methamphetamine turned over by Mr. Benson to the officers.

Mr. Benson, he instead placed the $150 in his wallet.  Mr. Gant was acquitted of the controlled substance charge.

Two years after Mr. Gant's acquittal, the State charged Mr. Benson with first degree perjury.  The information alleged Mr. Benson gave materially false testimony when he stated he did not purchase any drugs from John Gant on October 30, 2012. The exact statements that formed the basis of the charge were identified in a bill of particulars.[2]

---

[2] The statements identified in the bill of particulars were as follows:

Q.: Are you going to tell the jury who you got the Meth from?
A.: It was mine.
Q.: It was yours?
A.: The only reason I took the money from [the police] was to get the money.
Q.: Ok. So where did you have it?
A.: In my tool box in my pickup.
 . . . .
Q.: Did Mr. Gant give you any Methamphetamine while you were in the apartment?
A.: No. I, I –
Q.: Did he give you any Methamphetamine at any time?
A.: No.
 . . . .
Q.: You made a comment about Mr. Gant "not being the guy." What do you mean by that?
A.: When we were at the house, Mr. Gant never gave me anything. That's all I meant by that. Mr. Gant never gave me any drugs at all, ever.

CP at 7-8.

Mr. Benson's case proceeded to trial. The State presented testimony from the two officers who had handled Mr. Benson's cooperation. The officers described their surveillance activities and interactions with Mr. Benson. According to the officers' testimony, they would have searched any tool box located in Mr. Benson's truck as well as Mr. Benson's wallet. Yet during the pre-buy search, the officers did not discover any methamphetamine. Nor did the officers ever see Mr. Benson retrieve anything from the bed of his pickup during the course of their surveillance. During the post-buy search, Mr. Benson was not discovered to have $150 on his person. In addition to the officers' testimony, the State introduced the entire wire recording of Mr. Benson's undercover activity, along with Mr. Benson's post-buy recorded statement to police. The entire statement was played for the jury, as were portions of the undercover recording.

At several points during the trial, the prosecutor explained that Mr. Benson had perjured himself by claiming that the drugs turned over to police were his.[3] Defense counsel reiterated this clarification and pointed out the various false statements attributed to Mr. Benson that were *not* the subject of the perjury charge.

---

[3] During opening statements, the prosecutor stated, "And when you have heard everything and [are] deliberating about this case you are left with two choices: Did [Mr. Benson] lie on the stand regarding whose drugs this was, or was it really his?" 1 Report of Proceedings (RP) (Oct. 31, 2016) at 117. During closing argument, the prosecutor stated Mr. Benson was "contesting the perjury charge saying that the dope was his." 3 RP (Nov. 2, 2016) at 379.

The prosecutor concluded his rebuttal argument with the following statement, to which the defense objected:

> [PROSECUTOR]: You know, one might, you know, people like analogies. It's always kind of difficult to come up with one that makes sense. If this were a trial about whether or not a boat existed, was made, and the plaintiff was alleging this is a boat, this would be a case where the defense is telling you, well, we're not sure because we don't know if it has one mast or two masts, maybe even three masts, when all you have to decide is, is it a boat, and will it float? And the State submits to you that you know, after you have, now that you have heard everything—
> [DEFENSE COUNSEL]: Your Honor, I apologize. I have to object. I think counsel is trivializing the term—
> THE COURT: Overrule. Again, ladies and gentleman what the lawyers say isn't evidence. It's not the law. You will get the evidence from what you heard and get the law from my instructions.
> Go ahead. This is argument.
> [PROSECUTOR]: After you have seen, gone through the evidence, the transcript, the wires, that you are left with no reasonable doubt but that Mr. Benson committed the crime of Perjury back in June 2013. Thank you.

3 Report of Proceedings (Nov. 2, 2016) at 413-14.

The jury was given a standard pattern instruction that direct and circumstantial evidence carry equal weight and value (instruction 5).[4] The jury was also given an instruction specific to the heightened evidentiary requirements for perjury (instruction 7). *See*, *e.g.*, *State v. Singh*, 167 Wn. App. 971, 976, 275 P.3d 1156 (2012) (explaining the requirement). Instruction 7 provided:

---

[4] CP at 171; 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 5.01, at 181 (4th ed. 2016).

5

To convict the defendant of the crime of Perjury in the First Degree, there must be either positive testimony of at least two credible witnesses that directly contradicts the defendant's statement made under oath or there must be one such direct witness along with independent direct or circumstantial evidence of supporting circumstances that clearly overcomes the oath of the defendant and the legal presumption of defendant's innocence.

CP at 173. The to-convict instruction (instruction 11) listed the elements of first degreeperjury but did not contain any reference to the heightened evidentiary requirement described in instruction 7. Mr. Benson was found guilty of first degree perjury. He appeals.

## ANALYSIS

### *Sufficiency of the evidence*

In a sufficiency challenge, our inquiry is "whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). All reasonable inferences are drawn in the State's favor, and the evidence is interpreted most strongly against the defendant. *Id.* This court does not reweigh the evidence and substitute its judgment for that of the trier of fact. *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980).

A person is guilty of first degree perjury if, in any official proceeding, he or she makes a materially false statement, which he or she knows to be false, under an oath required or authorized by law.  RCW 9A.72.020(1).  The evidentiary requirements for a perjury conviction are more stringent than all other crimes, except treason.  *State v. Arquette*, 178 Wn. App. 273, 282, 314 P.3d 426 (2013).  Sufficient evidence for a perjury conviction requires

> "the direct testimony of at least one credible witness, and that testimony to be sufficient must be positive and directly contradictory of the defendant's oath; in addition to such testimony, there must be either another such witness or corroborating circumstances established by independent evidence, and of such a character as clearly to turn the scale and overcome the oath of the defendant and the legal presumption of his innocence. Otherwise the defendant must be acquitted."

*State v. Rutledge*, 37 Wash. 523, 528, 79 P. 1123 (1905) (quoting *People v. Rodley*, 131 Cal. 240, 261, 63 P. 351 (1900)).  This direct testimony must come "from someone in a position to know of his or her own experience that the facts sworn to by defendant are false." *Nessman v. Sumpter*, 27 Wn. App. 18, 24, 615 P.2d 522 (1980).

Mr. Benson claims the State's evidence was insufficient to meet the heightened evidentiary requirements for perjury.  We disagree.  The State presented testimony from law enforcement officers that Mr. Benson did not have any methamphetamine on his person or in his vehicle prior to the meeting with Mr. Gant.  This directly contradicted

7

Mr. Benson's testimony that the methamphetamine had come from a tool box located on his truck bed. The officers' testimony regarding the origins of the methamphetamine was corroborated by the audio recording of Mr. Benson's interactions with Mr. Gant, during which the men discussed drug terminology and a $150 purchase. It was also corroborated by the statements made by Mr. Benson during his recorded debriefing. The State's corroborating evidence was inconsistent with Mr. Benson's claim of innocence. There was, therefore, sufficient evidence to justify the jury's guilty verdict.

*To-convict jury instruction*

Mr. Benson claims that the court's to-convict instruction was flawed in two ways: (1) the instruction did not inform the jury of the heightened evidentiary requirements applicable to perjury, and (2) the instruction did not specify which false statement formed the basis of the State's charge. We reject both challenges.

### *Essential elements*

Jury instructions are reviewed de novo. *State v. Johnson*, 180 Wn.2d 295, 300, 325 P.3d 135 (2014); *State v. Pirtle*, 127 Wn.2d 628, 656, 904 P.2d 245 (1995). Taken together, the instructions must inform the jury that the State bears the burden of proving every essential element beyond a reasonable doubt. *Johnson*, 180 Wn.2d at 306; *Pirtle*, 127 Wn.2d at 656. Because the to-convict instruction is the "'yardstick by which the jury

measures the evidence,'" it must contain all of the essential elements of the charged

crime. *Johnson*, 180 Wn.2d at 306 (quoting *State v. Sibert*, 168 Wn.2d 306, 311, 230

P.3d 142 (2010)). Other instructions cannot be used to supplement a defective to-convict

instruction. *Id.*

Mr. Benson criticizes the court's to-convict instruction because it did not recite

the heightened evidentiary requirements applicable to perjury. This argument fails

because a crime's evidentiary standard is different from its elements. Elements are

"'[t]he constituent parts of a crime—[usually] consisting of the actus reus, mens rea,

and causation.'" *State v. Peterson*, 168 Wn.2d 763, 772, 230 P.3d 588 (2010) (alteration

in original) (quoting *State v. Fisher*, 165 Wn.2d 727, 754, 202 P.3d 937 (2009)). An

evidentiary standard merely governs how the elements of a crime must be proved. It

was unnecessary for the trial court's to-convict instruction to provide an explanation

of evidentiary standards. Instead, it was sufficient for the standards to be set forth in

a separate instruction, as was done here. Mr. Benson's challenge therefore fails.

*Specification of the charged offense*

The court's to-convict instruction alleged "[t]hat on or about the 26th day of June,

2013, the defendant made a false statement." CP at 177. For the first time on appeal,

Mr. Benson raises the concern that the jury may have convicted him for making a false

statement different from the statements identified in the State's charging document and bill of particulars.

We find no reversible error. Any vagueness in the court's instruction was sufficiently addressed by the clarification presented by both counsel for the State and defense counsel. *See State v. Kitchen*, 110 Wn.2d 403, 409, 756 P.2d 105 (1988) (no multiple acts problem when the State tells "the jury which act to rely on in its deliberations"). Further instruction from the court was therefore unnecessary.

*Prosecutorial misconduct*

Allegations of prosecutorial misconduct are reviewed for an abuse of discretion. *State v. Lindsay*, 180 Wn.2d 423, 430, 326 P.3d 125 (2014). A defendant bears the burden of showing that the prosecutor's comments are both improper and prejudicial. *Id*. Allegedly improper arguments by the prosecutor must be reviewed in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given. *State v. Russell*, 125 Wn.2d 24, 85-86, 882 P.2d 747 (1994).

Mr. Benson claims the prosecutor's boat analogy misstated the burden of proof and denigrated the defense. We disagree. Viewed in context, the prosecutor's analogy simply pointed out that the jury should focus on the false statement that formed the basis of the crime charged (the boat), not details regarding other false statements or wrongdoing (the

10

various masts of the boat). While the prosecutor's analogy may not have been perfect, it did not undermine the fairness of Mr. Benson's trial. The trial court appropriately overruled Mr. Benson's objection to the prosecutor's argument.

## CONCLUSION

The judgment of conviction is affirmed.[5]

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____      _____
Lawrence-Berrey, C.J.                 Korsmo, J.

---

[5] Because we find no error, we need not address Mr. Benson's argument that his conviction should be reversed on the basis of cumulative error.

11