IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 77322-4-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| RODNEY EUGENE MANS, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | FILED: April 29, 2019 |

ANDRUS, J. — Rodney Mans appeals his conviction and sentence for second-degree burglary and felony violation of a court order. He argues that the instruction defining recklessness relieved the State of its burden of proof and that the trial court coerced the jury into entering findings on two alleged aggravating factors by instructing the jury to correct errors on the verdict forms. But the jury instructions were not erroneous under State v. Johnson, 180 Wn.2d 295, 325 P.3d 135 (2014). And Mans fails to demonstrate judicial coercion. We therefore affirm.

## FACTS

Rodney Mans and Theresa Lopez had a two-year relationship and had a daughter together. In March 2016, after the birth of their child, Mans assaulted Lopez at a shopping mall, resulting in the entry of a no-contact order. Lopez nevertheless remained in touch with Mans thereafter because she loved him and wanted to make the relationship work. The two continued to communicate via text

message. The relationship, however, remained difficult with Mans accusing Lopez of sleeping around. About a month after entry of the no-contact order, Mans came to the house Lopez shared with her father, ringing the door bell and pounding on the door until he broke the screen door. Lopez called the police because she was scared. This scenario repeated itself three or four times.

There were times, however, that Lopez allowed Mans to enter the home, and the two would end up having sex. She sometimes allowed him to sleep in the car in the garage when he had nowhere else to sleep. Her father refused to permit Mans to sleep in the house.

On the morning of October 21, 2016, after Lopez's father had left for work, Mans showed up at Lopez's home. Thinking her father had returned, Lopez got up out of bed to open the door. Mans pushed his way into the house and the two began to fight. During the struggle, Lopez testified that Mans choked her to the point where she thought she "was going to die." She testified that at some point, he was on top of her while she lay prone on the floor, hitting her in the back of her head. She stated Mans told her he had a gun and she felt it in his hand. He let her up after several minutes and, while pointing the gun at her, ordered her into the bedroom.

When they saw headlights of an arriving car through the bedroom window, Lopez told Mans her father had returned. This comment distracted Mans, allowing Lopez to escape the house in her underwear. She called 9-1-1 from a neighbor's home after the newspaper deliveryman refused to open his car door to let her in. When Federal Way Police officers arrived, they were unable to locate Mans. They

found Mans' belongings, including his coat, backpack, and an airsoft pistol used to threaten Lopez, in the trunk of a vehicle parked in the garage.

On December 12, 2016, the State charged Mans with second degree assault (Count I), first degree burglary (Count II), and felony violation of a court order (Count III). The State alleged a domestic violence aggravating factor for each count.

On December 16, 2016, Lopez invited Mans to her home. The two engaged in consensual sexual intercourse but were interrupted by Lopez's brother, who, knowing about the no-contact order, called the police. Mans had again left the premises by the time officers arrived.

In May 2017, the State amended the information to charge Mans with another count of felony violation of a court order (Count IV) for the December 2016 incident, again alleging a domestic violence aggravating factor. The State also alleged the aggravating factor that the crimes charged were part of an ongoing pattern of psychological, physical, or sexual abuse.

Mans' jury trial began on May 16, 2017. The jury began deliberations on May 23, 2017. The trial court provided the jury with verdict forms for each of the four counts, and a Special Verdict Form. The Special Verdict Form asked two questions as to each charge: whether Mans and Lopez were members of the same family or household before or at the time the crime was committed and whether the offense was part of an ongoing pattern of psychological, physical, or sexual abuse of the victim. The court instructed the jury that if it did not find Mans guilty of any of the four charged crimes, it should not answer the corresponding Special Verdict Form questions. But if the jury found Mans guilty of any of the crimes, it

- 3 -

should answer each question "yes" or "no" according to the decision it reached for the relevant crime. Instruction No. 25 indicated that in order to answer the Special Verdict Form "yes," it must unanimously be satisfied beyond a reasonable doubt that "yes" is the correct answer. And it instructed them that "[i]f after full and fair consideration of the evidence you are not able to reach a unanimous decision as to the answer, do not fill in the blank on that special verdict form."

On May 26, 2017, the jury sent a note to the trial court indicating it had reached verdicts on the burglary, and two violation of court order charges (Counts II-IV), but it could not agree on a verdict on the assault charge (Count I). The trial court asked the jury foreperson to confirm on the record that the jury was deadlocked on Count I.

Without the jury present, the trial court and the parties agreed the court would poll the jury and if the jurors agreed they were deadlocked, the court should declare a mistrial as to Count I. They also agreed the court would then take the jury's verdict for Counts II through IV.

When the trial court brought the jury out, it proceeded as the parties had agreed by polling the jury. Each juror confirmed the jury was unable to reach a verdict as to Count I. The court asked the jury to return to the jury room, at which time it declared a mistrial as to Count I and discharged the jury as to that count only.

The trial court then brought the jury back to render its verdicts on Counts II through IV. The trial court reviewed the verdicts and the Special Verdict Form, and before the clerk could read the verdict, the trial court again dismissed the jury to speak with counsel. The trial court informed the parties that the jury had answered

two questions on the Special Verdict Form relating to Count I, the charge for which the trial court had just declared a mistrial, the jury had not answered the two questions relating to Count II, and the foreperson had not signed the Special Verdict Form. The trial court indicated its intent to bring the foreperson into the courtroom a second time to "inquire as to what happened. It could be that . . . this was simply as omission but I want to clarify." Neither party objected to proceeding in this fashion.

The trial court called the jury foreperson out for a second time, and the following exchange occurred:

> COURT: On the Special Verdict . . . Form, I note that there are no answers as to Count II, and your signature and date is not contained on the Special Verdict Form. Can you tell me – and, again, I don't want to know the details, but was that simply an accidental omission?
>
> FOREPERSON: Yes, sir.
>
> COURT: Okay. I am going to . . . send you back out.

After the foreperson left the courtroom, the trial court suggested to counsel that it bring the jury out and instruct it to complete the forms according to the jury instructions. Neither counsel for the State nor counsel for Mans objected to this course of action. Defense counsel stated "I guess, Your Honor, they have verdicts. I don't know how much we are to inquire as to the rest of the process when they say they have a verdict." The trial court explicitly acknowledged that it did not want to "coerce the jury into doing anything." It stated it did not deem it to be coercive to tell the foreperson that the verdict was unsigned. Defense counsel seemed to agree that it was permissible to just inform the jury to fill out the form according to the jury's instructions.

When the trial court brought the jury into the courtroom, it said: "As I explained to the foreperson . . . some of these forms are not filled out and, I'm . . . going to send you back with these forms and simply ask that you follow your instructions and notify us when and if you're ready."

The jury returned approximately six minutes later, and found Mans guilty on the remaining three counts. On the Special Verdict Form, the jury had scratched out the answers to questions relating to Count I, and had answered "yes," to the two questions relating to Count II. The trial court then polled the jury to confirm unanimity and subsequently discharged the jury.

On June 20, 2017, Mans moved to dismiss the jury's findings as to Count II, asserting that the trial court had improperly suggested that the jury needed to fill in an answer in the Special Verdict Form as to Count II. He argued the jury could have left the questions blank if they had not reached a unanimous decision as to either question, and the trial court, by suggesting the blanks were a "mistake," implied that the jurors needed to reach agreement in violation of CrR 6.15(f)(2). The trial court denied the motion, citing to CrR 6.16(b) for its conclusion that it was allowed to order the jury to retire for further consideration, and to State v. Ford, 171 Wn.2d 185, 250 P.3d 97 (2011), for its conclusion that Mans failed to show that the jury was still deliberating and undecided when the court made its comments.

On July 28, 2017, the court imposed a mid-range standard sentence of 101 months on count II, 60 months on count III, and 60 months on count IV, all to run concurrently.[1]

## ANALYSIS

Mans first asserts that the "to-convict" instruction for violation of a court order, when read with the definition of recklessness, relieved the State of its burden of proving that Mans disregarded a substantial risk that death or physical injury could occur.

We review jury instructions de novo. State v. Johnson, 180 Wn.2d at 300. "Jury instructions, taken in their entirety, must inform the jury that the State bears the burden of proving every essential element of a criminal offense beyond a reasonable doubt." Id. at 306 (quoting State v. Pirtle, 127 Wn.2d 628, 656, 904 P.2d 245 (1995)). A to-convict instruction must contain all of the elements of the crime "because it serves as a yardstick by which the jury measures the evidence to determine guilt or innocence." Id. (quoting State v. Sibert, 168 Wn.2d 306, 311, 230 P.3d 142 (2010)). Other jury instructions cannot supplement a defective to-convict instruction. Id.

Instruction 21, the to-convict instruction for Count III, provided in pertinent part that:

> To convict the defendant of the crime of violation of a court order as charged in Count 3, each of the following five elements of the crime must be proved beyond a reasonable doubt:

---

[1] It also imposed a concurrent 12 month sentence on a subsequent unrelated charge (King County Superior Court no. 17-1-00489-4). That charge was not used in the calculation of the offender score for this case. This court recently reversed that conviction and sentence in an unpublished opinion. See State v. Mans, No. 77321-6-I (Wash. Ct. App. Mar. 11, 2019) (unpublished), http://www.courts.wa.gov/opinions/pdf/773216.pdf.

(1) That on or about October 21, 2016, there existed a no-contact order applicable to the defendant;

(2) That the defendant knew of the existence of this order;

(3) That on or about said date, the defendant knowingly violated a provision of this order;

(4) That

(a) the defendant's conduct was an assault that did not amount to assault in the first or second degree; or

(b) the defendant's conduct was reckless and created a substantial risk of death or serious physical injury to another person; and

(5) That the defendant's act occurred in the State of Washington.

Instruction 12 provided a definition of "recklessness:"

A person is reckless or acts recklessly when he or she knows of and disregards a substantial risk that a wrongful act may occur and this disregard is a gross deviation from conduct that a reasonable person would exercise in the same situation.

When recklessness as to a particular fact or result is required to establish an element of a crime, the element is also established if a person acts intentionally or knowingly as to that fact or result.

Instruction 12 is a verbatim restatement of Washington Pattern Jury Instruction (WPIC) 10.03, which is taken from RCW 9A.08.010(1)(c).

Mans argues that by defining recklessness as disregarding a substantial risk that "a wrongful act may occur," Instruction 12 lowered the State's burden of proving that Mans created a substantial risk that death or serious physical injury would occur. This argument, however, was explicitly rejected in State v. Johnson. In that case, a jury convicted Johnson of multiple domestic violence crimes against his wife, including second-degree assault. Johnson argued he received ineffective assistance of counsel when his attorney offered the generic definition of recklessness in his proposed instructions. 180 Wn.2d at 305. Johnson argued, as Mans does here, that the to-convict instruction, when read in conjunction with

the recklessness instruction, lowered the State's burden of proof because the phrase "a wrongful act" was used instead of the more charge-specific language "substantial bodily harm." Id.

The Supreme Court disagreed. It held the to-convict instruction correctly articulated the elements of second-degree assault, including the element of recklessly inflicting substantial bodily harm. Id. at 306. The generic instruction defining "reckless" was sufficient without any charge-specific language because the to-convict instruction included the proper language. Id. at 305.

Mans does not contend Instruction 21 failed to set out all the elements of the charged crime. As in Johnson, Instruction 21, the to-convict instruction, accurately set forth the elements of RCW 26.50.110(4).[2] Instruction 12 contained the general WPIC definition of reckless. Because the two instructions were proper under Johnson, we reject this argument.

Mans next argues that the trial court improperly intervened with the jury's deliberations because it coerced the jury into rendering a verdict as to the aggravators for Count II. To prevail on a claim of improper judicial interference, a defendant "must establish a reasonably substantial possibility that the verdict was improperly influenced by the trial court's intervention." State v. Ford, 171 Wn.2d 185, 188-89, 250 P.3d 97 (2011) (quoting State v. Watkins, 99 Wn.2d 166, 178,

---

[2] Under RCW 26.50.110(4):

> Any assault that is a violation of an order issued under this chapter, chapter 7.92, 7.90, 9A.40, 9A.46, 9A.88, 9.94A, 10.99, 26.09, 26.10, *26.26, or 74.34 RCW, or of a valid foreign protection order as defined in RCW 26.52.020, and that does not amount to assault in the first or second degree under RCW 9A.36.011 or 9A.36.021 is a class C felony, and any conduct in violation of such an order that is reckless and creates a substantial risk of death or serious physical injury to another person is a class C felony.

660 P.2d 1117 (1983)). This requires an affirmative showing; it cannot be based on mere speculation. Id. But, before doing so, the defendant must make a threshold showing that the jury was still in the deliberative process. Id.

Mans' argument is foreclosed by State v. Ford. In that case, Ford was charged with two counts of child rape. Id. at 186. When the presiding juror alerted the trial court that the jury had reached a unanimous verdict, the court announced the verdict for the second count but not for the first. Id. at 186-87. After a brief sidebar with counsel, the court alerted the jury that it had failed to complete the verdict form for the first count. Id. at 187. Before sending the jury back to the jury room, the court instructed the jury that the form "must be filled in." Id. Ford did not object. Id. at 188. The jury returned four minutes later with a guilty verdict for the first count. Id. at 187-88. The trial court then polled the jury and confirmed its verdict was unanimous on both counts. Id. at 189.

Ford argued the trial court erred by directing the jury to complete the verdict form for the first count. Id. at 188. Ford alleged a violation of CrR 6.15(f)(2), which prohibits a court from instructing the jury in a way that suggests the need for agreement. Id. at 190. The Supreme Court rejected this argument because the record showed that the jury had informed the court it had reached a verdict and, after being instructed by the court to complete the verdict forms, it returned after only four minutes, demonstrating the jury's deliberations were complete. Because the jury was not still within the deliberative process, CrR 6.15(f)(2) was inapplicable. Id. at 191.

This case is analogous to Ford. Here, the jury alerted the trial court that it had reached decisions for Counts II, III, and IV but that it could not agree on Count

I. As a result, the court declared a mistrial as to Count I. The court then reviewed the verdicts and the Special Verdict Form and noticed the jury had answered the questions on the Special Verdict Form as to Count I but not as to Count II. The foreperson had also failed to sign the Special Verdict Form.

Both counsel for Mans and counsel for the State agreed with the court's suggestion to question the foreperson about the forms. When the foreperson confirmed that it was an "accidental omission," there was no objection to the court's suggestion that it return the verdict forms to the jury to be completed according to the jury instructions. In fact, counsel for Mans conceded that the jury had completed its deliberations by that point. The jury returned the completed and signed verdict forms six minutes later. When polled, each juror stated that the verdicts were unanimous.

The record here, like in Ford, demonstrates the jury had completed its deliberations by the time the trial court alerted it that the Special Verdict Form was incomplete. Mans has thus failed to make a threshold showing that the jury was in the deliberative process when the trial court made its comments to the jury. Thus, as in Ford, we find no violation of CrR 6.15(f)(2).

Affirmed.

WE CONCUR:

Andrus, J.

- 11 -