THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| NIKOLAY SIDORKO, | ) | No. 80017-5-I |
| | ) | |
| Appellant, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| THE STATE OF WASHINGTON, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

ANDRUS, A.C.J. — Nikolay Sidorko appeals his conviction for three counts of forgery. The sole issue on appeal is the adequacy of the charging document. Sidorko argues the information lacked an essential element of the crime of forgery, depriving him of his constitutional right to notice. We disagree and affirm his conviction.

## FACTS

Sidorko, the owner of a company called Deluxe Flooring, maintained a business account with the check-cashing agency, Micro Loans Northwest, in Kent, Washington. In February 2017, Sidorko attempted to cash three checks at Micro Loans, all of which were returned as fraudulent. Micro Loans reported the fraudulent activity to the Kent Police.

Sidorko told the police that his clients had given him bad checks. But each of the account holders testified they had not signed the checks in question, they had never met Sidorko nor heard of Deluxe Flooring, and they had checks stolen from their mailboxes a week or two before Sidorko attempted to cash the fraudulent checks.

The State charged Sidorko with three counts of forgery. The State alleged:

### Count 1 Forgery

[T]he defendant Nikolay V. Sidorko in King County, Washington, on or about February 15, 2017, with intent to injure or defraud, did falsely make, complete and alter a written instrument, to-wit: a bank check, and knowing the same to be forged did possess, utter, offer, dispose of and put off as true to Micro Loans such written instrument of the following tenor and effect: a check drawn on the account of [M.H.], cashed by the defendant, in the amount of $3209.00; [c]ontrary to RCW 9A.60.020(1)(a),(b) . . .

Counts 2 and 3 were identical in language except for the name on the account from which the check was drawn and the amount of the check.

The jury convicted Sidorko on all three counts.

### ANALYSIS

Sidorko argues his constitutional right to notice of the charges against him was violated because the state failed to include all essential elements of the charged crime of forgery in the information. He contends the information lacked the allegation that the documents he allegedly forged had "legal efficacy."

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution require that a charging document allege all essential elements of a crime, statutory and nonstatutory, to inform the defendant of the charges against him and to allow him to prepare his defense. State v.

Hopper, 118 Wn.2d 151, 155, 822 P.2d 775 (1992); State v. Kjorsvik, 117 Wn.2d 93, 101–02, 812 P.2d 86 (1991); State v. Ralph, 85 Wn. App. 82, 84, 930 P.2d 1235 (1997). The information must also allege facts supporting every element of the offense. State v. Leach, 113 Wn.2d 679, 689, 782 P.2d 552 (1989).

The sufficiency of an information is an issue of constitutional magnitude that may be raised for the first time on appeal. RAP 2.5(a)(3); Kjorsvik, 117 Wn.2d at 102. Because Sidorko challenges the charging document for the first time after the jury rendered its verdict, we construe the information liberally and ask (1) whether the necessary elements of the offense do not appear in any form, or by fair construction cannot be found, in the charging document; and (2) whether he was actually prejudiced by the faulty information. Id. at 105-06. We review the constitutional sufficiency of an information de novo. State v. Johnson, 180 Wn. 2d 295, 300, 325 P.3d 135 (2014).

Where a defendant challenges the sufficiency of a charging document, the question "is whether all the words used would reasonably apprise an accused of the elements of the crime charged." Kjorsvik, 117 Wn.2d at 109. However, "[t]he state need not include definitions of elements in the information." State v. Johnson, 180 Wn.2d 295 at 302

Sidorko's information closely tracked the language of RCW 9A.60.020(1), which provides:

> A person is guilty of forgery if, with intent to injure or defraud: (a) He or she falsely makes, completes, or alters a written instrument or; (b) He or she possesses, utters, offers, disposes of, or puts off as true a written instrument which he or she knows to be forged.

RCW 9A.60.010(7)(a) defines "written instrument" as "[a]ny paper, document, or other instrument containing written or printed matter or its equivalent." Although neither statute defines the word "instrument," the Supreme Court defined "written instrument," as used in RCW 9A.60.020, as "something which, if genuine, may have legal effect or be the foundation of legal liability." State v. Scoby, 117 Wn.2d 55, 57-58, 810 P.2d 1358 (1991).

In State v. Ring, 191 Wn. App.787, 364 P3d 853 (2015), Division Two of this court rejected the argument that legal efficacy is an essential element of the crime of forgery. Id. at 794. In that case, the defendant was charged with forging affidavits of lost titles that he then submitted to the Department of Licensing. Id. at 789. Ring contended, as does Sidorko, that State v. Kuluris, 132 Wash. 149, 231 P. 782 (1925), required the State to allege that the documents he allegedly signed had legal efficacy. Ring, 192 Wn. App. at 792-93; App. Br. 12. Like Sidorko, Ring's information recited the statutory elements of 9A.60.020(1). Id. at 792.

The Ring court accepted the defendant's reading of Kuluris as holding that an information charging forgery is insufficient if it does not allege facts sufficient to show that the documents at issue, if genuine, would have had legal efficacy. Id. at 793. But, because the definition of "written instrument" in RCW 9A.60.010(1) includes the common law notion of legal efficacy, Scoby, 117 Wn.2d at 57, all elements were present in Ring's information. Ring, 191 Wn. App. at 793. Furthermore, because "the state need not include definitions of elements in the information," Johnson, 180 Wn.2d at 302, Division Two concluded legal efficacy is

no longer an essential element of the crime of forgery and stated that Kuluris had thus been abrogated by Johnson in the forgery context. Ring, 191 Wn. App at 794.

Sidorko argues that this reasoning is flawed. However, we read Kuluris much more narrowly than Sidorko and Division Two, and do not need to adopt Division Two's reasoning to reach the same result. In that 1925 case, Kuluris, an employee of the Northern Pacific Railway, allegedly signed a false certification to the company that a man named John Palos was employed by the company and entitled to pay in the amount of $63.30. Kuluris, 132 Wash. at 149-150. The railroad company, in reliance on Kuluris's false entry in the company records, issued Palos a check. Id. When charged with forgery, Kuluris challenged the sufficiency of the information. Id. The statute in effect at the time, Rem. Comp. Stat. § 2585, provided that "[e]very person who, with intent to injure or defraud shall * * * make any false entry in any public or private record or account * * * shall be guilty of forgery in the second degree." Id. at 150.

The Kuluris court held that the information was insufficient because it failed to contain allegations that the document Kuluris signed was something "more than a mere request, made without right, which might or might not be complied with at the option of the person to whom it was given." Id. at 151. The court cited with approval 12 RULING CASE LAW § 11,[1] p. 148 (1916) for the proposition that "to constitute a forgery, a writing or instrument must be such that if genuine it would have some efficacy as affecting some legal right." Id. And it adopted the following

---

[1] The publication entitled RULING CASE LAW was an encyclopedia containing a digest of decisions and annotations from various state courts, federal courts, and English courts. F. Hicks, Materials and Methods of Legal Research 207-08 (2d ed. 1933). R.C.L. is the predecessor to AM.JUR. and AM.JUR.2D. M. Gould Gallagher, Legal Encyclopedias, in HOW TO FIND THE LAW 265 (7th ed. 1976).

passage from 26 CORPUS JURIS, § 91, p. 943 (1921), entitled "Where Legal Efficacy Not Apparent:"[2]

> It is indispensable that <u>the efficacy of the instrument to defraud shall appear either on the face of it as set out in the indictment or information or by the allegation of extrinsic facts</u>, unless, as is sometimes the case, it is otherwise provided by statute. Cases not infrequently arise where the fraudulent character of the alleged forged writing can be made to appear only by innuendoes, introducing extraneous facts and circumstances which show that the writing possessed a fraudulent character not discernible, except when read in the light of such facts and circumstances. Where the instrument is of this character, it is essential not only to set out the instrument itself but also to allege extrinsic facts to show its capacity to defraud; and a failure to allege such facts renders the indictment fatally defective * * *

(Emphasis added; footnotes omitted). <u>Id.</u> at 152. By relying on this statement of the law from CORPUS JURIS, our Supreme Court signaled that the railroad company certificate Kuluris signed was a document whose legal efficacy was not apparent from the face of the information and, as a result, it required the State to allege additional extrinsic facts to show the signed document's capacity to defraud. <u>See</u> 37 C.J.S. Forgery § 16 (June 2020 Update) (test of whether a document may be the subject of forgery is whether signature on document makes it possible to defraud another).

Kuluris does not stand for the broad proposition that in forgery cases the State must allege that the document signed by a defendant had legal efficacy. It merely held that, when the legal efficacy of a document is not readily apparent, the

---

[2] CORPUS JURIS, the predecessor to CORPUS JURIS SECUNDUM, identified itself as "A Complete and Systematic Statement of the Whole Body of the Law as Embodied in and Developed by All Reported Decisions."

State must allege extrinsic facts to show the signed document's capacity to deceive.

This reasoning was reiterated by the Supreme Court in State v. Taes, 5 Wn.2d 51, 104 P.2d 751 (1940). In that case, the state charged Taes with forgery of a bank check that did not contain the name of a bank. Id. at 53-54. The information in Taes was held insufficient, not because it failed to adequately allege the check's legal efficacy, but because "[n]o extrinsic facts are stated in the information which indicate what bank, if any, was intended" and "there are no authorities holding that an instrument, like the one in question, which calls for the payment of money, would have any efficacy in affecting a legal right." Id. Based on this reading, Kuluris can be harmonized with our current statutory framework and the facts as alleged in the information here.

First, the information in this case contains the extrinsic facts not present in Kuluris or Taes. The State alleged, not only that Sidorko falsified a "written instrument," but pleaded facts describing the specific type of document at issue: signed "bank checks" drawn on specific bank accounts and cashed by Sidorko. Unlike the internal company record signed by Kuluris, the legal efficacy of a signed check appears on its face. In check forgery cases, this court and our Supreme Court have found the element of legal efficacy lacking where the checks in question were either unsigned or did not identify the relevant bank. State v. Smith, 72 Wn. App. 237, 864 P.2d 406 (1993); Taes, 5 Wn.2d 51. Like Taes, the analysis in Smith also focused on whether the instrument itself was sufficient to support the element of legal efficacy. See Smith, 72 Wn. App at 243 (holding "that a written

instrument can support a charge of forgery when it is incomplete, but not when it is so incomplete that it would lack legal efficacy even if genuine."). We face no such question here.

There can be no dispute that a signed check has legal efficacy under our modern Uniform Commercial Code. A "check" is a type of negotiable instrument payable on demand and drawn on a bank. RCW 62A.3-104(f). A negotiable instrument is "an unconditional promise or order to pay a fixed amount of money." RCW 62A.3-104(a). If a person signs a check and issues it to another, he or she is liable for the amount of the check. See Smith, 72 Wn. App. at 243 (under RCW 62A.3-401(a), an unsigned check is non-negotiable and lacking in legal effect). Once signed, a check essentially becomes the signing party's instruction to a bank to pay cash to the person presenting it to that bank.

Second, the Kuluris court was not dealing with the statutory elements of forgery as codified in RCW 9A.60.020(1), but the elements of an earlier statute that has since been supplanted by the modern penal code. The version in effect then did not require the forged document to meet the legal definition of a "written instrument." As Ring correctly noted, the existence of a "written instrument" is now an essential element of the crime, 191 Wn. App. at 791. And an "instrument" is— by definition in common law—a document that has legal efficacy. State v. Richards, 109 Wn. App. 648, 654, 36 P.3d 1119 (2001). The statute in 1925 did not require the State to plead or prove the existence of an "instrument." The Supreme Court's decision in Kuluris, requiring the State to plead extrinsic facts to

- 8 -

demonstrate the legal efficacy of the railroad internal records, makes sense given the statutory language in effect at that time.

By alleging that Sidorko forged a "written instrument" (the statutory term) and "checks" (extrinsic facts), Sidorko had ample notice of the conduct "necessary to establish the very illegality of the behavior charged." State v. Pry, 194 Wn.2d 745, 752, 452 P.3d 536 (2019). The necessary elements of the offense can appear "in any form," Kjorsvik, 117 Wn.2d at 105, and they do so here by the State's inclusion of the description of the type of instruments Sidorko forged, bank checks.

Sidorko relies on Pry to argue that Ring's characterization of "legal efficacy" as definitional, rather than an element of forgery, is misplaced because definitions can sometimes be essential elements of a charged crime. Pry, however, involved a very different statutory scheme and a facially insufficient information. In that case, the Supreme Court held insufficient an information charging the defendant with the crime of rendering criminal assistance in the first degree, concluding it failed to plead any of the six acts identified by statute as the acts constituting that crime.[3] 194 Wn.2d at 757. The information in Pry simply alleged that the defendant had rendered criminal assistance in the first degree and cited the statute. Id. at

---

[3] RCW 9A.76.050 provides that "a person 'renders criminal assistance' if, with intent to prevent, hinder, or delay the apprehension or prosecution of another person who he or she knows has committed a crime or juvenile offense or is being sought by law enforcement officials for the commission of a crime or juvenile offense or has escaped from a detention facility, he or she: (1) Harbors or conceals such person; or (2) Warns such person of impending discovery or apprehension; or (3) Provides such person with money, transportation, disguise, or other means of avoiding discovery or apprehension; or (4) Prevents or obstructs, by use of force, deception, or threat, anyone from performing an act that might aid in the discovery or apprehension of such person; or (5) Conceals, alters, or destroys any physical evidence that might aid in the discovery or apprehension of such person; or (6) Provides such person with a weapon."

753-54. It did not plead extrinsic factual allegations to identify the conduct the State contended constituted that crime. Id. at 757.

Here, however, the State did not just recite statutory language. The information specifically alleged extrinsic facts covering each statutory and non-statutory element of the crime of forgery: Sidorko (1) acted with the intent to injure or defraud, (2) falsely made, completed and altered three bank checks, and (3) knowing the bank checks to be forged, cashed them at Micro Loans. Under the liberal construction and common sense standard applicable to this appeal, we conclude the element of legal efficacy can be found by fair construction in Sidorko's charging document and Sidorko was thus reasonably apprised of the crime charged.

Even if Sidorko contends the words "bank checks" as used in the information are vague, under Kjorsvik, he must still prove that the vague or inartful language in the information caused actual prejudice. Kjorsvik, 117 Wn.2d at 106, 111. Sidorko makes no attempt to present any such evidence here. For this reason, we conclude the information adequately notified Sidorko of the crimes he was charged with committing.

Affirmed.

Andrus, A.C.J.

WE CONCUR: